IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

NATHANIEL BALDWIN
AND MICHAEL GAUSE                                                            PLAINTIFFS

V.                                                       CIVIL ACTION NO. 2:03CV391-B-A

GLAD PROPERTIES, L.L.C.,
d/b/a ULTIMATE CAR WASH                                                       DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court upon the defendant's motion to dismiss and motion for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiffs, Nathaniel Baldwin, Michael Gause, and Eric Edwards[1], former employees of the defendant, Glad Properties d/b/a Ultimate Car Wash, brought this action pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging employment discrimination, racial harassment, and retaliation. The plaintiffs are black males who began working as at-will employees for the defendant's car wash in Southaven, Mississippi, in 2001.

The plaintiffs allege that they began to experience acts of discrimination based on their race shortly after beginning their employment with Ultimate Car Wash. They contend that the defendant did not compensate them in a manner equivalent to their white co-workers; that the defendant maintained a hostile workplace where the plaintiffs endured improper comments and

---

[1]Eric Edwards' claims were dismissed without prejudice on August 5, 2005, for failure to retain counsel and failure to inform the court that he wished to proceed *pro se*.

jokes directed against the black race by white co-workers; and that the defendant retaliated against the plaintiffs when they complained of the co-workers' actions.

The plaintiffs also contend that white employees were afforded certain benefits which were not extended to the black employees. These benefits included such matters as being allowed to work on one's personal vehicle during work hours and being allowed to work on customers' vehicles in pairs. The plaintiffs assert that, while white employees were allowed to work in pairs doing automobile detailing jobs, the plaintiffs often had to work alone; and if a white employee was scheduled to work with either of the plaintiffs, the white employee would "play and joke around outside the shop" while the plaintiffs worked inside.

According to the plaintiffs, when they complained about the use of racial slurs or the general unfairness in the workplace, the black employees would be reprimanded rather than the white employees. Plaintiff Gause testified, however, that at least on one occasion, a white co-worker was immediately reprimanded for approximately fifteen minutes when Gause complained of his behavior.

The plaintiffs contend that, though they were scheduled to leave at 4:00 p.m. on December 4, 2002, they were "written up" the next day for violating company policy by leaving early without completing their assigned tasks. They allege that they were demoted in association with this reprimand.[2]

---

[2]Neither plaintiff has alleged or shown evidence that these purported demotions resulted in reductions in pay. Although the complaint alleges that the defendant terminated the plaintiffs' employment, the plaintiffs' depositions and their responsive briefs leave some ambiguity in this regard. The court ordered the defendant to elucidate this matter with further briefing, and, as discussed below, the defendant has made clear that the plaintiffs were not terminated or demoted.

Each plaintiff filed a complaint with the Equal Employment Opportunity Commission, and each was ultimately issued a right-to-sue letter. The plaintiffs filed the present suit claiming that they are entitled to compensatory and punitive damages. The defendant moved to dismiss for the plaintiffs' failure to comply with discovery requests and for failure to submit any evidence of economic damages. The defendant has also moved for summary judgment.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

## Analysis

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

3

compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Title VII disparate-treatment claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under *McDonnell Douglas*, in order to survive summary judgment, the plaintiff must establish a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802, 935 S. Ct. at 1824. If the plaintiff meets this burden, a presumption of discrimination arises, and the employer must proffer a legitimate, non-discriminatory reason for its actions or decisions. *Id.* If the employer is able to do so, the burden shifts back to the plaintiff, who must prove at "'a new level of specificity' that the reasons articulated by the employer are not true reasons but only pretexts." *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 639 (5th Cir.1985) (quoting *United States Postal Service Bd. of Governors v. Aikens*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94, 67 L. Ed. 2d 207 (1981)).

"Although the *McDonnell Douglas* framework shifts the burden of production between the plaintiff and the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Pierce v. Texas Dept. of Transportation*, No. 3:01CV2098-AH, 2002 WL 31757635, at *3 (N.D. Tex. Dec. 4, 2002) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)).

The necessary elements of a prima facie case are not inflexible. Rather, they vary depending upon the facts of the particular case. *Thornbrough*, 760 F.2d at 641. A plaintiff may present a prima facie case of race discrimination by showing that he was within the protected

4

class, that he was qualified for the position, and that employees outside the protected class were more favorably treated. *Id.* at 639; *Waggoner v. City of Garland*, 987 F.2d 1160, 1163-1164 (5th Cir.1993); *see also Young v. City of Houston,* 906 F.2d 177, 180 (5th Cir. 1990).

"To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Municipal Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981). In other words, "[t]o avoid summary judgment on his wage claim, plaintiff must prove that he occupied a position similar to white employees who were compensated at a higher rate." *Lee v. Georgia-Pacific Corp.*, 944 F. Supp. 497, 502 (S.D. Miss. 1996). In *Lee*, the plaintiff could not "identify any white employees who were paid more than he," and he "submit[ted] no record evidence of discrimination." *Lee*, 944 F. Supp. at 503. The court found in favor of the defendant and stated that "[m]ere suspicions do not create triable issues . . . ." *Id.*

In the present case, the plaintiffs stated that they never received a raise during the course of their employment. Baldwin asserts that he worked for Ultimate Car Wash for two years without receiving any raise or pay increase while white employees regularly received raises. This statement, however, is contradicted by his deposition testimony in which he states that he received a pay increase from $6.00 an hour to $9.00 an hour over the course of his employment. Baldwin has failed to establish that he was paid less than the individuals he mentions; nor has he established that the white employees had substantially the same responsibilities as he did. Baldwin's deposition testimony reveals that when he quit his job, Baldwin was receiving the

5

highest rate of pay in his work area and was surpassed in compensation only by management personnel and salesmen who earned regular commissions in addition to their hourly salaries. Gause, who began his employment at $7.00 per hour, does not know how his starting wage compared with those of his white co-workers. Further, Gause has not shown that he was entitled to a raise, as he only worked at Ultimate Car Wash for approximately two months. While he alleges that white employees received raises when he did not, he does not know which white employees received raises; nor does he know the amount of the alleged raises, how much the white employees were making at the time of their alleged raises, or whether they were ever paid more than he was.

The court finds that the plaintiffs' claims of discriminatory compensation have no basis in fact. It appears that the plaintiffs have simply made a number of unsupported statements speculating in regard to raises allegedly given to white co-workers. The plaintiffs have not established that they were paid less than the white co-workers to which they refer; indeed, in Baldwin's case the opposite appears to be true. The court, therefore, finds that the plaintiffs' claims for discriminatory compensation must be dismissed.

To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that "(1) he participated in statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse action." *Pierce*, 2002 WL 31757635, at *7 (citations omitted). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* at *8.

An adverse employment action or "ultimate employment decision" involves "acts such as hiring, granting leave, discharging, promoting, and compensating." *Id.*

In the case sub judice, the plaintiffs allege that, as a result of the "assertion of their rights and protected opposition to discrimination, [they] were demoted or terminated" and made to suffer certain "adverse employment actions" including "lost wages and benefits [and] mental abuse." The plaintiffs contend that they were demoted when they were instructed to work outside the car wash rather than inside the detail shop.

The plaintiffs cannot establish a prima facie case of retaliation because the second element is lacking. They have not shown that they suffered an adverse employment action. Initially, some ambiguity surrounded the question of whether the plaintiffs were terminated or demoted. For instance, the plaintiffs' deposition testimony revealed that neither knew for certain whether he was expected to work outside permanently or whether that reassignment would have resulted in a decrease in pay. Further, though the plaintiffs asserted that they were wrongfully terminated, it appeared from their deposition testimony that neither was actually fired. The court, therefore, requested further briefing and exhibits on this issue. The defendant responded with an affidavit explicitly and unequivocally stating that the plaintiffs were neither demoted or terminated. The plaintiffs were not fired; they voluntarily left their employment. The plaintiffs did not suffer adverse employment actions for which Title VII offers redress.

In addition to their allegations of demotion and termination (which have been incontrovertibly negated), the plaintiffs assert that they suffered retaliation in such ways as being "written up" for actions for which their white co-workers were not reprimanded and being forced to comply with a dress code which was not enforced upon their white co-workers. They further

7

contend that white employees were allowed benefits such as being allowed to work on their personal vehicles. The plaintiffs allege that they were not allowed this privilege except on certain occasions. While these and the other examples set forth by the plaintiffs are ill-advised and inappropriate employment actions, they are not ultimate employment decisions as defined by the law. "In determining whether a defendant's action constitutes an adverse employment action, '[the Fifth Circuit is] concerned solely with ultimate employment decisions.'" *Hockman v. Westward Communications, L.L.C.*, 407 F.3d 317 (5th Cir. 2004) (quoting *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir. 1998)). "Ultimate employment decisions include acts 'such as hiring, granting leave, discharging, promoting, and compensation.'" *Webb*, 139 F.3d at 540 (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Though the plaintiffs allege that they were discriminatorily discharged and compensated, the record, including the plaintiffs' own testimony, shows these assertions to be clearly without merit. The other employment actions cited by the plaintiffs do not fit within the definition of "ultimate employment decisions" and can, therefore, not amount to "adverse employment actions." No genuine issue of material fact exists as to the plaintiffs' retaliation claims, and the defendant is thus entitled to summary judgment on these claims.

    The court now turns to the plaintiffs' claims regarding a hostile work environment. To establish a prima facie case of racial harassment in a hostile work environment, a plaintiff must show: (1) that the employee belongs to a protected class; (2) that the employee was subjected to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should

have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos De Venezuella, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-720 (5th Cir. 1986)). "For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Celestine*, 266 F.3d at 353 (quoting *Watts*, 170 F.3d at 509). This requires a plaintiff to "prove more than a few isolated incidents of racial enmity." *McDonald v. Southern Diversified Indus., Inc.*, No. 1:02CV186-D-D, 2003 WL 22244321, at *5 (N.D. Miss. Aug. 5, 2003) (quoting *Diggs v. Burlington Northern and Santa Fe Ry. Co.*; 1:00CV1-D-D, 2001 WL 588856, at *3 (N.D. Miss. Jan. 23, 2001)). "A discriminatorily hostile workplace is one which is permeated with 'discriminatory intimidation, ridicule, and insult.'" *McDonald*, 2003 WL 22244321 at *5 (quoting *Diggs*, 2001 WL 588856 at *3). The plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). "[R]acial comments that are sporadic or part of casual conversation do not violate Title VII, and conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *McDonald*, 2003 WL 22244321 at *5. To determine whether an environment is sufficiently hostile, courts must consider "all the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, or merely offense, and whether the conduct unreasonably interferes with an employee's work performance." *Id.*

In the case sub judice, the plaintiffs assert that white employees used racial epithets and made racial remarks about black customers. The plaintiffs do not allege that any of these remarks or epithets were used in a threatening or intimidating way, and, in fact, the record indicates that most of the comments were not directed at the plaintiffs. While it is certainly understandable that the plaintiffs might find each of the comments cited personally offensive, the comments appear to have been made in a casual, non-threatening manner.

The plaintiffs offer some examples of the offensive language. According to the plaintiffs, if a black male customer was accompanied by a white woman, a white co-worker would allegedly comment that the customer is obviously "pimping out" the white woman. If a black male customer arrived in an expensive car, a white co-worker would allegedly comment that the customer must be a drug dealer or a pimp. In addition to these examples, the plaintiffs offer a list of one-word racial epithets allegedly used by their white co-workers.

With the above-referenced examples, the plaintiffs have done precisely what this and other courts have found insufficient – that is, they have attempted to prove "a few isolated incidents of racial enmity." Further, plaintiff Gause testified that when he complained about an offensive incident, a managerial staff member promptly reprimanded the offending white employee in the manager's office for approximately fifteen minutes. Examining the evidence in the light most favorable to the plaintiffs and considering, as it must, the context of the offensive language, the "frequency and severity of the conduct, whether it is physically threatening or humiliating, or merely offense, and whether the conduct unreasonably interferes with [the] employee's work performance," the court finds that the plaintiffs have neither alleged nor shown that they were the victims of a hostile work environment in a manner that would entitle them to

10

recovery against the defendant under Title VII.  Because the plaintiffs have presented no genuine issue of material fact regarding their hostile work environment claims, the court finds that the defendant is entitled to judgment as a matter of law on these claims.

## Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well-taken and should be granted.  The defendant's motion to dismiss for discovery violations and failure to submit evidence of economic damages is thus rendered moot.  A separate order in accord with this opinion shall issue this day.

This, the 19th day of January, 2006.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**